IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENNIFER D. W.,[1]

    Plaintiff,

v.

Commissioner, Social Security Administration,

    Defendant.

Civ. No. 6:18-cv-00356-MK

OPINION AND ORDER

KASUBHAI, Judge:

Plaintiff Jennifer W. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her application for Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On December 19, 2014 Plaintiff filed an application for Disability Insurance Benefits, alleging disability as of September 20, 2014. Tr. 166-67.[2] Plaintiff was denied initially upon application and upon reconsideration. Tr. 75-86, 87-97. Upon Plaintiff's request, a hearing was held and on June 29, 2017, an Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled and denied her claim. Tr. 13-22. The Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

Plaintiff now contends that the ALJ erred: (1) in failing to provide a legally sufficient reason to discount the opinion of treating physician Dr. House; (2) in rejecting Plaintiff's subjective symptom testimony; and (3) in failing to properly credit lay-witness testimony. For

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of both the non-governmental party in this case and any immediate family members of that party.
[2] "Tr." Refers to the Transcript of Social Security Administrative record provided by the Commissioner.

1 – OPINION AND ORDER

the reasons below, the Commissioner's decision is REVERSED and this matter REMANDED for an immediate award of benefits.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, this court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. If the claimant satisfied her burden with respect to the first four steps, the burden then shifts to the Commissioner with regard to step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate the claimant is capable of making an adjustment to other work after considering the claimant's Residual Functional Capacity ("RFC"), age, education, and work experience. *Id.*

In the present case, the ALJ found that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 20, 2014. Tr. 15. A step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease; fibromyalgia; and cervical degenerative disc disease, status post

fusion. *Id*. At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17.

Prior to step four, the ALJ determined that Plaintiff's RFC allowed her to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except she can occasionally reach overhead to the left and to the right. She can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. Plaintiff's time off task can be accommodated by normal breaks. Tr. 17. At step four, the ALJ found that Plaintiff could perform her past relevant work as a secretary, personnel clerk, and lending activities supervisor. Tr. 21. As a result, the ALJ concluded that Plaintiff was "not disabled" for purposes of the Social Security Act and therefore did not qualify for benefits. Tr. 22.

Plaintiff challenges the ALJ's non-disability determination on three grounds. First, Plaintiff argues that the ALJ failed to provide legally sufficient reasons to discount the opinion of Dr. House. Second, the ALJ erred in rejecting Plaintiff's subjective symptom testimony. And third, the ALJ erred in failing to properly credit lay-witness testimony.

## I. Treating physician's opinion

Plaintiff first challenges the ALJ's decision to give Dr. House's opinions "little weight." Pl.'s Br. 4. The ALJ found that Dr. House's opinions where "not supported with relevant evidence." Tr. 19. Plaintiff argues that the ALJ erred in failing to consider the appropriate regulatory factors for weighing treating physician opinions. Pl.'s Br. 4. Relying on *Trevizo v. Berryhill*[3] Plaintiff argues that the ALJ's failure to consider the length of treating relationship, frequency of medical examinations, nature and extent of treatment relationship constitutes reversible error. The Commissioner responds that the ALJ correctly discounted Dr. House's

---
[3] 871 F.3d 664, 676 (9th Cir. 2017) (as amended) (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

3 – OPINION AND ORDER

opinions as laid out in her April 2017 letter because they were not supported by relevant evidence. Def.'s Br. 8. The ALJ's decision concludes that the medical record objective evidence does not support the allegations of disabling physical functioning. Tr. 18-19. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (internal quotation marks omitted).

Here, a review of the medical record demonstrates that it contains ample objective evidence supporting Dr. House's opinion regarding the severity of Plaintiff's limitations. In her April 2017 letter, Dr. House assessed that due to "her well-established disabling diagnoses of cervical and lumbosacral disc disease with ongoing radiculopathies and permanent nerve damage, degenerative disc disease throughout her spine, all complicated by fibromyalgia," Plaintiff "requires frequent position changes including the ability to lay down, and has difficulty typing." Tr. 764-65. Plaintiff "cannot sit longer than 30 minutes (even in an ergonomic chair), cannot stand for more than 5-10 minutes, requires frequent position changes including the ability to lay down, and has difficulty typing due to upper extremity nerve damage which also then flares her neck issues." *Id*.

Dr. House's opinions are supported by her examinations as well as the clinical findings of other physicians who provided her with their records. Between December 2008 and April 2015, Dr. House treated Plaintiff at least 27 times. Tr. 338-428, 405-502. Multiple treating physicians provided Dr. House their records and imaging studies. Pl.'s Br 4-5.[4] No treating or examining physician has contradicted Dr. House's assessment. The vocational expert testified that these limitations "cannot be accommodated" at any competitive work situation." Tr. 58-9.

---

[4] Citing Tr. 343-4, 347-8, 354, 319, 321, 324 326, 419-25, 503, 505, 516, 767, 402-5, 407, 409, 411, 428, 484-5, 528, 549, 684, 687, 704, 710, 378, 381-6, 400, 379, 387-90, 392-7, 398-9, 476-82, 789.

The ALJ erred in failing to provide legally sufficient reasons for discounting Dr. House's opinion and for failing to evaluate the length of treating relationship, frequency of medical examinations, and nature and extent of treatment relationship between Dr. House and Plaintiff. "This failure alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676. Rather, the ALJ merely provided a general statement that Dr. House's opinions were "not supported with relevant evidence," (Tr. 19) while failing to identify substantial evidence in the record contradicting Dr. House's assessment. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct.")

The ALJ also relied on the medical opinions of two non-examining consultants made in April and June 2015 who found Plaintiff was capable of "light work." Tr. 19-20, 75-97. The ALJ gave their opinions "some weight," but further limited Plaintiff to sedentary work. Tr. 19-20. However, the opinions of non-examining doctors "cannot by [themselves] constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (emphasis in original).

## II. Subjective symptom testimony

Plaintiff next challenges the ALJ's decision to reject Plaintiff's subjective symptom testimony. When there are objective medical impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). The ALJ is no longer tasked with making an overarching credibility determination, but instead assesses whether the

claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304 (superseding SSR 96-7p, *available at* 1996 WL 374186).

Plaintiff's testimony is consistent with the record as a whole. Plaintiff testified that she was unable to work full-time primarily due to her fibromyalgia, which requires her to change positions, "to get up and move around" because she gets "so stiff and so sore, just from sitting down." Tr. 17-18, 34, 40, 44. Plaintiff stated that her worst pain was in her hips and that sitting in a chair causes pain in her hip and back. Tr. 38, 42-3. She stated, "Laying down is the only way, actually, to relieve the pain," and that she lies down on the couch half the day on average. Tr. 40-1, 43. Regarding her lumbar-spine impairments, Plaintiff testified that she has almost no feeling in her left foot and has pain that shoots down the back of her leg to her ankle. Tr. 17-18, 34-5, 38-9. Although she underwent a cervical fusion in April 2016, she still has numbness in her right arm, hand and fingers. Tr. 17, 36-37. When she tries to type she gets a severe numbness. *Id*.

The ALJ discounted Plaintiff's testimony for four reasons. First, the ALJ found that the objective medical evidence did not show Plaintiff was limited as alleged. Tr. 18. For example, the ALJ points to two chart notes indicating that Plaintiff had normal gait, one note made November 2016 and the other April 2017. Tr. 18, 770, 783. The April 2017 chart note also states though she had decreased sensation in her lower left leg. Tr. 783. More significantly, Plaintiff's normal gait in those two instances are not inconsistent with Plaintiff's testimony that because of her fibromyalgia, she must change her positions and must lie down on the couch half the day on average and her continued numbness in her right arm, hand and fingers.

Second, the ALJ observed that Plaintiff's symptoms improved with treatment. Tr. 18-19. The ALJ cites two chart-notes indicating overall improvements after Plaintiff underwent a cervical fusion to relieve Plaintiff's severe spinal stenosis and degenerative disc and facet

6 – OPINION AND ORDER

changes. Tr. 18-19. Those chart notes also indicate though that Plaintiff continues to experience right-hand numbness and weakness, decreased sensation, right shoulder pain, and some electric type pain in the left side of her neck. Tr. 557, 564.

The ALJ points to an August 20, 2015 chart-note where Plaintiff stated she was feeling "substantially better" and was gradually increasing her activity in terms of walking. Tr. 19, 549; Def.'s Br. 5-7. This observation however ignores the context of the chart-note, that the note pertains to being discharged after Plaintiff's emergency staple-removal surgery to correct a Peterson's Hernia. The reference to walking concerns post-surgery recovery: "Walking after this procedure began with a few feet." Tr. 315, 531, 549. There is no allegation that Plaintiff's hernia is a disabling impairment.

Third, the ALJ noted the State agency physician's report that Plaintiff had stopped working because she was laid off. Tr. 19, 82. An ALJ may discount a claimant's credibility when they stopped working for reasons unrelated to the allegations of disability. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001. This is not the situation here. Rather, both Plaintiff's health condition, well-documented in the medical record, and the closing of the call center where she worked led to Plaintiff's decision to stop working. Tr. 40, 82, 217, 460. At the hearing, Plaintiff testified that she was unreliable at this part-time employment, "constantly using my sick leave and my vacation time to deal with the illness." Tr. 40, 82. The call center's accommodations for Plaintiff's fibromyalgia and sciatic-nerve pain was proving ineffective. *Id*.

Fourth, the ALJ found Plaintiff's alleged disabling symptoms to be inconsistent with her daily activities. Tr. 19. Plaintiff went camping in an RV a few times in 2015; reported in October 2016 that she enjoyed gardening and fishing; walked for exercise; and was able to drive and do such chores as dusting, wiping countertops and straightening up. Tr. 19. "The ALJ may discredit

7 – OPINION AND ORDER

a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or "to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1004, 1112-13 (9th Cir. 2012). A closer look though reveals that efforts related Plaintiff's reported activities are overstated and are not "transferable to a work environment."

Regarding camping in 2015, Plaintiff "camped" in a fully contained RV where her husband did all the set up and tear down, and the trips were centered around the campsite. Tr. 244, 252, 301. Utilizing an RV does not undermine Plaintiff's reported symptoms stemming from fibromyalgia. Back in March 2015, Plaintiff indicated she enjoyed gardening, which is limited: "I only go to cut fresh roses from my garden" and "I can no longer weed, rake & mow." Tr. 244. At the hearing, she testified that she was no longer able to garden or salmon fish. Tr. 46. Plaintiff's daughter testified that Plaintiff no longer gardened, but that her husband takes care of the household and yard work. Tr. 20-1, 304. Plaintiff used to enjoy fishing but being on the water results in having to lay up in bed in too much pain to stand or walk. Tr. 21, 303. Finally, Plaintiff testified that walking around the block causes hip and back pain, and her household chores are minimal, limited to wiping down countertops and straightening up – not the kind of thorough, deep cleaning that could undermine a claimant's subjective testimony. Plaintiff's daily activities were sporadic, limited and often resulted in a need for her to rest afterwards to relieve pain. Tr. 18, 20-1, 43-46, 244, 252, 301, 303-4, 316. The ALJ has not offered clear and convincing reasons for rejecting claimant's testimony about the severity of her symptoms.

### III. Crediting lay-witness testimony

Plaintiff asserts the ALJ erred by failing to properly credit lay-witness testimony. Pl.'s Br. 18-19. The ALJ must take into account lay testimony as to the severity of a claimant's

symptoms. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ must provide specific "reasons germane to each witness" for discounting their lay-witness testimony. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). Here, the ALJ gave little weight to the statement of Plaintiff's parents-in-law for the given reason that the statement describing Plaintiff's activities were not inconsistent with sedentary work and offered no specific functional limitation. Tr. 21, 305-06. The parents-in-law submitted testimony in March 2018 in which they observed "three years prior, the claimant would attempt to help by using a riding lawn mower but then would have to lay down for hours," that she could not complete a game of Yahtzee "which took about an hour and half at the kitchen table" without a couple of breaks, that she "started to make dinner for Christmas in 2016 but was in so much pain she laid down and her husband took over," and that when they visited "it was not uncommon to see her reclined on the couch with the hot pad on." Tr. 21, 305. Despite the ALJ's characterization, the parents-in-law provided specific functional limitations, the need to lay down or take breaks within an hour and half of sitting. These are the same specific functional limitations identified by long-time treating physician Dr. House. These are the same specific functional limitations that the VE testified "cannot be accommodated" at any competitive work situation. Tr. 58-9.

## **CONCLUSION**

A case should be remanded for an award of benefits when: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and the opinions of her treating physician. There are no outstanding issues that must be resolved before an ALJ would be required to find the claimant disabled. Testimony from the VE shows that Plaintiff's limitations would bar employment and a finding of disability is warranted. For those reasons, the Commissioner's decision is REVERSED and this matter REMANDED for an immediate award of benefits.

Dated this 14th day of November, 2018.

      /s/Mustafa T. Kasubhai
      Mustafa T. Kasubhai
      United States Magistrate Judge